## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-00518

WILDEARTH GUARDIANS,

     Petitioner,

v.

UNITED STATES OFFICE OF SURFACE MINING RECLAMATION AND
ENFORCEMENT, *et al*.,

     Federal Respondents; and

SAN JUAN COAL COMPANY,

     Respondent Intervenor.

---

### ORDER ON MOTIONS TO TRANSFER AND SEVER, DOCS, 15 & 24

---

Kane, J.

Before me are Federal Respondents' Motion to Transfer and Sever Claims 9-15,

Doc. 15, and Respondent Intervenor San Juan Coal Company's Motion to Transfer and

Sever Claims 7&8, Doc. 24.[1] Petitioner WildEarth Guardians ("Petitioner" or "WEG")

opposes both motions. The Complaint alleges 15 claims challenging various mining

permits located in Colorado, Montana, Wyoming, and New Mexico.  Federal

Respondents' Motion seeks to sever and transfer to Wyoming the claims that involve

mining permits for mines located in Wyoming, and New Mexico-based San Juan Coal

company seeks to do likewise for the New Mexican mine claims.  Although I have a

---

[1] Petitioner's claims fall under the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq*. and the
Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., against the United States as a defendant.  Accordingly, I have
jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1346 (United States as a defendant),
2201 (declaratory relief), and 2202 (injunctive relief).  Venue is proper in this judicial district under 28 U.S.C. §
1391(e)(2) because "a substantial part of the events or omissions giving rise to the claim" took place at
Respondent OSM's Western Regional Office in Denver, Colorado. Defendant Al Klein is the director of OSM's
Western Regional Office and, in that capacity, recommended to the U.S. Secretary of the Interior approval of the
Mining Plans challenged.

history of granting transfer in environmental administrative cases, *see Friends of the Norbeck v.United States Forest Serv*., 2010 WL 4137500 at *1 (D. Colo. Oct. 18, 2010)(granting transfer, reasoning that cases with strong local interests should be decided locally); *see also WildEarth Guardians v. United States Forest Serv.,* 2012 WL 1415378, *52 (D.Colo. Apr. 24, 2012) ("It is axiomatic that '[t]here is a local interest in having localized controversies decided at home.'" *Id*. at *3, quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)), I have not had the opportunity to address the most suitable protocol where a case presents claims with competing local interests and respondents move to sever and transfer piecemeal.  Seizing the opportunity now, I hold that transfer by part, which will necessarily require severance, is appropriate where such will advance the local interests championed by *Norbeck* and its ilk.  The value in having environmental claims litigated where their impacts resonate most deeply eclipses any alleged judicial economy in lumping together in one suit and one venue various locally charged claims.

While Petitioner seems to appreciate that there is a preference for having local controversies settled locally, it argues against severance and transfer by pointing to its suit's allegedly unifying theme, namely the allegation that Federal Respondents' mining approvals all share the same flaw under NEPA: not involving the public in the approval process.   Accordingly, Petitioner argues that judicial economy and the risk of inconsistent judgment favors keeping the claims together in one action and in one venue.

Respondents counter that regardless of Petitioner's belief that the approvals all violated NEPA in the same way, each mining plan will stand or fall based on its unique administrative record.  Despite Petitioner's characterization of the suit as protesting a

"practice or pattern" of not involving the public, the petition does not present a facial

challenge to the Federal Respondents practice and procedures but rather is an "as

applied" challenge to seven separate decisions covering seven separate mines, each of

which will require the merits judge to review a separate and distinct administrative

record.  Furthermore, the challenged mining approval plans involve different types of

NEPA documents (e.g., Environmental Impact Statements (EISs), Environmental

Assessments (EAs), Findings of No Significant Impacts (FONSIs), Statements of NEPA

Compliance), each of which is subject to different public participation requirements.

Thus, a failure to involve the public for one type of NEPA documentation does not

necessarily shed any light on whether the public was properly involved for a different

type of NEPA documentation.

Because Respondents are correct as a matter of law that each mining plan will be

reviewed upon its own customized administrative record, I disagree with Petitioner that

the claims "arise out of the same transaction or occurrence" or "present some common

question of law or fact" such that severance would be improper, *see Preacher v. Wile*y,

No. 09-cv-278, 2009 WL 6409350 at *2 (D. Colo. Nov. 20, 2009), or, by extension, that

there is a risk of inconsistent judgment or a judicial economy to be gained by litigating all

alleged claims in one suit.  If some claims succeed and some claims fail, then that does

not necessarily mean that the judgments are inconsistent; rather that scenario may very

well mean that some mining plans were approved legally and others illegally. As

concerns any theoretical judicial economy, WEG does not explain what judicial economy

might be achieved by litigating all of the alleged claims in one suit.  It simply declares

that "dividing one case into three, as will happen if the Court grants both of the pending motions to sever and transfer, does not serve judicial economy."  While the division of a case often will not serve judicial economy, a blanket statement asserting that as a self-evident truth will not do.  Whether judicial economy is served depends entirely upon the nature of the claims involved.  Given the distinct circumstances and requirements for public participation underlying each of the seven decisions at issue in the instant suit's claims, I do not see what is to be economized by litigating the seven decisions in one action.

In addition to arguing that judicial economy favors litigating this action by the whole and in the District of Colorado, WEG contends that a finding of misjoinder must predicate severance under Fed. R. Civ. P. 21.  I disagree.  Rule 21 provides that "[o]n motion, or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."  Although the Tenth Circuit has not opined on the matter, it does not appear to have ever been presented with the question, and districts within the Tenth Circuit, including the District of Colorado have held that misjoinder is not a perquisite for severance. *Starr v. City of Lakewood*, No. 08–cv–01390-WYD-KLM, 2008 WL 4861955, *1 (D.Colo. Nov. 10, 2008);  *Bicycle Peddler, LLC v. John Does 1-177*, No. 13-cv-671, 2013 WL 1103473 (D. Colo. Mar. 15, 2013); *Tab Exp. Intern. v. Aviation Sim. Tech.*, 215 F.R.D. 621, 622 (D.Kan.2003)

This practice is in keeping with other circuits that have found Rule 21 to authorize severance of a claim without a finding of improper joinder, *see, e.g., Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618(2d Cir. 1968); *Sporia v. Pennsylvania Greyhound Lines*, 143

F.2d 105, 105 (3d Cir. 1944); *Safeco Ins. Co. v. City of White House*, 36 F.3d 540, 545-46 (6th Cir.1994).  WEG cites *Schudel v. Miller*, No. 12–cv–01864–REB–KLM, 2013 WL 1815730, at *5 (D. Colo. Apr. 29, 2013)  to suggest that there is a District of Colorado precedent for requiring misjoinder, but whatever else that precedent may be, it is not binding upon me and contradicts without explanation *Starr* and *Bicycle Peddler*.  In any event, the persuasive value of *Shudel* is dwarfed by the dozens of other cases allowing severance without misjoinder via Rule 21.

Finally, WEG posits that it would be prejudiced in the form of inconvenience, increased litigation expense and delay by severance and transfer.  In the vein of inconvenience, it protests that severance and transfer would force it to obtain local counsel or obtain *pro hac vice* admission in Wyoming.   Starting with this last supposed prejudice, obtaining *pro hac vice* admission in Wyoming is a simple matter of an electronic filing that can be done from the comfort of WEG's home office in Santa Fe, New Mexico. Indeed, WEG has already used this process to gain admission for its other litigation in Wyoming involving the Wright Area EIS.  As far as increased inconvenience and expense, the distinct circumstances and requirements for public participation underlying each of the seven decisions mean that WEG cannot litigate the claims together in a meaningful manner anyway.  Arguments will be tailored to each individual mine, the propriety of each mine's approval will be established individually and there is no logical reason why the decisions about the mines need to be issued on the same day.  I suspect that while it may take longer for WEG to receive the full picture of what it seeks,

WEG will receive opinions regarding at least some of the mines faster by litigating the claims as proposed by Respondents and Respondent Intervenor.

Having established that there is nothing inherently problematic with carving up an environmental action involving multiple claims that implicate strong local interests in more than one geographic location and that misjoinder is not required to sever claims per Rule 21, I now hold that severance and transfer are appropriate on the facts of this case for the reasons set forth in the pending motions. Accordingly, the Motions at Docs. 15 and 24 are GRANTED. Claims 9 through 15 shall be transferred to the District of Wyoming for all further proceedings and claims 7 and 8 shall be transferred to the District of New Mexico for all further proceedings. Furthermore, I order *sua sponte* that claims 5 and 6 involving the Spring Creek Mine in Montana be transferred to the District of Montana for all further proceedings.

DATED:      February 7, 2014                   BY THE COURT:

                                               *s/John L. Kane*
                                               John L. Kane, U.S. Senior District Judge